IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**EVAN NORDGREN**

      Plaintiff,

vs.

**EPIC SYSTEMS CORPORATION**

      Defendant.

Case No. 13-cv-840

---

**BRIEF IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND JOINT STIPULATION FOR CLASS CERTIFICATION**

---

The parties have moved for preliminary approval of the settlement reached between Plaintiff, the putative Classes, and Defendant. The Settlement Agreement provides for a total settlement of $5,400,000. This settlement is fair and reasonable, as it fully satisfies this Court's criteria for such settlements. As such, and in furtherance of the settlement conditions on such certification, the parties respectfully request that the Court certify Plaintiff's proposed Class and accept the schedule, Notice, and settlement administration process proposed by the parties, including setting a final Fairness Hearing.

STATEMENT OF FACTS

## I. PROCEDURAL HISTORY

Plaintiff Evan Nordgren filed this action against Epic Systems Corp. on December 6, 2013. (Dkt. #1). Plaintiff alleged, on behalf of those similarly situated, that Defendant improperly classified its Quality Assurance employees ("QAs") as

exempt from overtime wages. Defendant, after filing a motion to dismiss, answered Plaintiff's Complaint and denied that QAs have been misclassified. (Dkt. #35). The parties stipulated to conditional class certification, and just under 1,000 current and former QAs were mailed Notice in May 2014. (Dkt. #46, Order Granting Unopposed Motion for Conditional Collective Action Certification). Collective Class Members had until July 29, 2014 to elect to opt-in the FLSA Collective Class. A total of 45 individuals have elected to "opt-in" to the FLSA Class.

## II. WORK PERFORMED BY CLASS COUNSEL

Plaintiff has engaged in collecting discovery, which has included the production and review of hundreds of thousands of pages of documentary evidence. (Dkt. #69, Declaration of William E. Parsons in Support of Parties' Joint Motion for Preliminary Approval of Class Action Settlement ("Parsons Dec.") at ¶2). On January 17, 2014, Plaintiff served 56 Requests for Production of Documents on Defendant, and received and reviewed over 200,000 pages of documents. (Parsons Dec. ¶2). These documents included training documents, recruiting documents, internal "wikis" outlining the job requirements of QA and other employees at Epic, and thousands of pages of emails. (Parsons Dec. ¶2). Plaintiff's counsel conducted a thorough review of these documents. (Parsons Dec. ¶2).

Plaintiff's counsel has also engaged in protracted discussions with opposing counsel in regards to discovery. (Parsons Dec. ¶3). The parties met and conferred numerous times to resolve various disputes. (Parsons Dec. ¶3). When these meetings proved unsuccessful, Plaintiff prepared a motion to compel, though

Defendant's desire to proceed to mediation prevented this motion from being filed. (Parsons Dec. ¶3).

Plaintiff has also taken the 30(b)(6) deposition of two current Epic employees, which took place over the course of three days. (Parsons Dec. ¶4). Given its significance to the case, counsel for Plaintiff expended substantial effort in preparations for these depositions, including the review and summary of hundreds of thousands of pages of documentary evidence. (Parsons Dec. ¶4).

Additionally, had mediation not been successful, Plaintiff's counsel was prepared to depose several individuals involved in supervising and recruiting QAs, as well as the key decision makers at Epic, including its president. (Parsons Dec. ¶4).

Plaintiff engaged and conferred with several experts in litigating this case and seeing it through to resolution. (Parsons Dec. ¶5). Plaintiff consulted with George Friday, a former United States Department of Labor investigator with knowledge and experience with the computer professional exemption, regarding the application of the exemption by the Department. (Parsons Dec. ¶5). Plaintiff also engaged Linda Westfall, a software engineer by training whose company provides training and consulting on software testing, among other things. (Parsons Dec. ¶5). Westfall provided Plaintiff with information regarding industry standards for software testing, the qualifications required to become a software tester, and compared the duties and training of Epic's QAs to industry norms. (Parsons Dec. ¶5). Finally, Plaintiff retained Dr. Gregg Rothermel, a software engineering

professor at the University of Nebraska – Lincoln. Dr. Rothermel's expertise is in software testing techniques, and he conferred with Plaintiff on industry standards for software engineering and software testing. (Parsons Dec. ¶5). These experts aided Plaintiff in drafting discovery and preparing for depositions by providing background on the computer professional exemption, and the types of testing used within the computer industry.

Finally, Plaintiff engaged Advanced Analytical Consulting Group to aid in analyzing the data produced by Defendant. (Parsons Dec. ¶6). This data included approximately 90,914 lines of time log data ("TLG" data) for the putative Rule 23 Class, salary information, and other information used to show when work was being performed, including security swipe data and the time-stamps of the first and last emails sent each day by Class Members. (Parsons Dec. ¶6). These experts performed various analyses on the data to identify the types of work Class Members were performing based on their TLG data, comparing hours worked using swipe and email data to the TLG data, and creating models to calculate damages that accounted for all the variables in the case. (Parsons Dec. ¶6).

In preparation for mediation, Plaintiff's counsel interviewed the opt-in Class Members and prepared declarations. (Parsons Dec. ¶7). Plaintiff also reviewed the data produced by Defendant with opt-ins for accuracy. (Parsons Dec. ¶7). Plaintiff drafted a mediation statement and prepared exhibits for use in mediation. (Parsons Dec. ¶7).

### III. SETTLEMENT BACKGROUND

On July 24, 2014, the parties agreed to attempt to mediate the case. (Parsons Dec. ¶7). The parties exchanged names of numerous mediators, and ultimately agreed upon retired federal magistrate judge from the Northern District of Illinois, Morton Denlow. (Parsons Dec. ¶7). Judge Denlow, in additional to experience on the federal bench and in private practice as a class action attorney, has specialized expertise in resolving complex wage and hour disputes. (Parsons Dec. ¶7).

In anticipation of the mediation, Defendant produced to Plaintiff complete payroll and TLG data for the putative Fed. R. Civ. P. 23 Class. Counsel for Plaintiff, in turn, provided this information to his damages expert, Advanced Analytics Consulting Group, who created Plaintiff's damages model. (Parsons Dec. ¶6). The model used the actual hours recorded by each member of the Class on a week to week basis to calculate the regular and overtime pay rate each for each week during the statutory period. (Parsons Dec. ¶6). The model allowed for counsel to add a variable number of work hours to each week across the Class, presuming that all hours worked were not captured in Defendant's TLG system. (Parsons Dec. ¶6). Defendant created a similar model and upon comparison the parties agreed that both models returned essentially the same values given the same variables. (Parsons Dec. ¶6).

Prior to sitting down at mediation, the parties shared mediation statements outlining their divergent views on the legal and factual issues in the case. (Parsons Dec. ¶7). As could be expected, the parties agreed on very little. Defendant maintains that QAs are exempt either as administrative or as computer employees.

Further, Defendant contends that if overtime hours were worked it was minimal, as the TLG data reflects an average workweek of 41.3 hours. Plaintiff takes the view that Plaintiff and putative Class Member's job duties and qualifications do not fit that of either an exempt computer or administrative employee. Further, the Plaintiff maintains that the TLG system was never intended to be used as a time clock; as such, not all work hours are recorded in the system and at most the TLG data establishes a floor for how many hours each QA worked.

The parties negotiated at arm's length and were able to reach a settlement. The terms were memorialized in the Settlement Agreement, filed as Exhibit 1 to this Brief. The terms of the settlement, stated briefly, are as follows:

- There is a $5,400,000 Settlement Fund;

- The parties agree to stipulate to Fed R. Civ. P. 23 certification of the QA Class for purposes of settlement; said Stipulation is filed herewith (Dkt. #67);

- There is no claims process; opt-in Plaintiffs and members of the Fed. R. Civ. P. 23 Class will receive payments from the Settlement Fund unless they exclude themselves;

- Plaintiff's counsel will petition for attorneys' fees and costs from the Settlement Fund.

- Settlement amounts allocated to individuals who exclude themselves from the settlement, individuals who do not cash their settlement checks, and amounts not approved as enhancement payments, costs, or attorneys' fees shall revert to Access Community Health Centers.

This settlement is fair and was reached at arm's length. The Settlement Notice proposed by the parties adequately informs the Class Members of their right to participate in the settlement, to exclude themselves from the settlement, and to object to the settlement, as well as the legal implications of each of these actions.

(Dkt. 68.1, Ex. B to the Parties Settlement Agreement, Proposed Settlement Notice). Because the settlement is fair and was reached by the parties at arm's length, the parties jointly request that the Court grant preliminary approval of the settlement and allow Plaintiff to mail the Settlement Notice attached as Exhibit B to the parties' Settlement Agreement. (Dkt. #68.1).

## ARGUMENT

### I. PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

#### A. The Criteria for Preliminary Approval Have Been Satisfied.

Resolution of class action litigation by settlement is favored by the federal courts. Isby v. Bayh, 75 F.3d 1191, 1996 (7th Cir. 1996).  Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the bona fide dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. Lynn's Food Store, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action may only be approved if (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. United

Founders Life Ins. Co. v. Consumers National Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971)(internal quotations omitted). Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows members of the settlement class to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which members of the settlement class may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement agreement may be presented. See Manual for Complex Litigation at §§ 13.14, 21.632.

1. **The Proposed Settlement is Fair, Reasonable, and Adequate.**

The Settlement Agreement, as well as the amount and method of payment to the Class detailed in said agreement, is fair and reasonable for the parties. Real disputes exist between the parties as to whether liability exists in this case and, if liability is shown, the extent of the damages owed to Plaintiff and the putative Class.

The settlement provides all participating Settlement Class Members a substantial benefit in light of the risk of no recovery. All participating Settlement

Class Members will be paid overtime wages for all hours worked over 40 in work weeks within the two-year statute of limitations. Further, Class Members are receiving overtime pay on more than merely the hours they recorded in Defendant's TLG system. Were the settlement to only compensate the Class Members for hours recorded in the TLG system, the total overtime damages in the case would be $3,555,082 (excluding liquidated damages for the state law class). Instead, through negotiation, the parties agreed to allow for damages beyond those hours recorded in the TLG systems. Plaintiff and Class Members will be compensated for 3.7 hours per week beyond the TLG data, or a class-wide average of 45 hours per week, less attorneys' fees. This amount represents a substantial and fair settlement for each participating Class Member.

### 2. Individual Claim Amounts Have Been Calculated by the Most Accurate and Equitable Method Available

Plaintiff's counsel has calculated the individual claim amounts for the Rule 23 Class Members and the FLSA opt-in Plaintiffs using an accurate and fair methodology. Individual claim values will be calculated using the TLG data produced by Defendant as their basis. Consistent with Plaintiff's position that the TLG data does not represent all hours worked, Plaintiff will add 3.7 hours to each week, which produces a class average of 45 hours per week. To compensate Class Members employed by Defendant beyond the dates for which TLG data has been provided (the period from September 6, 2014 to December 1, 2014), Plaintiff's counsel has used the existing data to extrapolate hours worked. Plaintiff's counsel determined the average hours per week based on the provided data, and projected

that average through December 1, 2014, to determine claim value up until the anticipated date of final approval.

Plaintiff will determine the effective hourly rate of pay for each Class Member based on their salary and hours worked during the Class Period. This effective hourly rate will be multiplied by 50% to determine the overtime rate for each week. Plaintiff will multiply each hour over forty per work week by the weekly overtime rate to determine the Class Member's full claim value.

For FLSA opt-in plaintiffs, this claim value will be doubled pursuant 29 U.S.C. § 216(b), and the statute of limitations will be calculated as three years prior to the filing of the Class Member's consent. For all other Class Members, their claims shall be increased by 50% pursuant Wis. Stat. § 109.11(2). Plaintiff will then allocate settlement funds on a pro rata basis based on the total value of the individual claims.

Payments will be made through the settlement without a claims process. Any payments that are otherwise available for those who exclude themselves, as well as any amount of attorneys' fees or costs not approved by the Court, will revert to Access Community Health Centers.

### 3. The Attorneys' Fees and Costs Sought Are Reasonable.

Given the work performed by Plaintiff's counsel, and the risks inherent in accepting a contingent fee class action, Plaintiff's attorneys' fees and costs are reasonable. In Plaintiff's Motion for Attorneys' Fees, Plaintiff will request an award of one-third of the Settlement Fund in attorneys' fees in addition to costs to be paid

from the Settlement Fund. One-third of the settlement fund is a typical award for attorney's fees in class cases in this circuit, and attorney's fees of similar amounts have been approved by this Court. Gaskill v. Gordon, 160 F.3d 361, 362 (7th Cir. 1998) ("most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis…[t]he typical contingent fee is between 33 and 40 percent"); Sjoblum v. Charter Communs., No. 07-cv-451, dkt. #394 (W.D. Wis. Jan. 26, 2009, Crabb, J.); Wilcox v. Alternative Entm't, Inc., No. 09-cv-659, dkt. #175 (W.D. Wis. Mar. 8, 2011, Crabb, J.).

4. The Settlement Was Reached Through Extensive Arm's-Length Negotiations.

The parties have divergent views regarding Plaintiff's assertions in his Complaint, but were able to work towards a compromise in this matter and did so at arm's length. Counsel for both parties offers their Declarations attesting to the same. (Parsons Dec. ¶8; Dkt. #70, Declaration of Attorney Noah Finkel in Support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement at ¶2).

5. The Requested Enhancement Payment Is Reasonable.

The Settlement Agreement provides that the Class Representative shall receive an enhancement payment in recognition of his efforts as well as the benefit each Class Member derived from his individual efforts. The amount of this enhancement payments, $5,000 to Class Representative Evan Nordgren, is reasonable and well within the range of similar enhancement payments granted by this Court. See, e.g., Wilcox, No. 09-cv-659, dkt. #175 at 5 (approving award of

$25,000 enhancement payment to three named plaintiffs); Sjoblum, No. 07-cv-451, dkt. # 392 ¶ 23 (approving award of $112,010 to the named plaintiff).

## II. THE PLAINTIFF'S FED. R. CIV. P. 23 CLASS SHOULD BE CERTIFIED

### A. Plaintiff Has Satisfied This Court's Implicit Standards.

In addition to the Fed. R. Civ. P. 23(a) and 23(b) standards, this Court requires that its implicit standards for certification are met. The proposed class definition must be definite, that is, ascertainable, precise and objective. Blihovde v. St. Croix, 219 F.R.D. 607, 614 (W.D. Wis. 2003, Crabb, J.). The class representative must also be a member of the class he represents.

The members of the Plaintiff's proposed Class are definite. The parties have identified these individuals and have calculated their damages. The definition does not include any subjective criteria but, rather includes all QAs, excluding Team Leads, during the applicable statute of limitations.

Class Representative Evan Nordgren is a member of the Wisconsin Class he represents and worked hours over 40 per work week without overtime compensation during the applicable statutory period.

### B. Plaintiff Has Satisfied the Fed. R. Civ. P. 23(a) Standards.

#### 1. Plaintiff's Proposed Class is Numerous.

The numerosity requirement of Fed. R. Civ. P. 23(a) requires a "showing that the number of members in the proposed class is so large as to make joinder impracticable." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 663-4 (7th Cir. 2004). Meeting this requirement takes only a good faith non-speculative estimate of

the size of the proposed class. *Anderson v. Capital One Bank*, 224 F.R.D. 444 (W.D. Wis. 2004, Crabb, J.).

Based on information provided by Defendant, there are 986 QAs who are currently or have been employed by Defendant within the applicable statute of limitations. (Parsons Dec. ¶6).

### 2. There Are Asserted Questions of Law and Fact Common to the Class.

Rule 23(a) requires a finding that there are questions of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). This requires plaintiffs to show that they have all suffered the same injury, a "common contention" such that resolving the common issue will resolve all of the included claims in a single stroke. Wal-Mart v. Dukes, 131 S. Ct. 2541, 2551(2011) ("What matters to class certification . . . is not the raising of common 'questions'…but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." (internal citations omitted)); Williams-Green v. J. Alexander's Rests., Inc., 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims….arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2)").

Questions asserted to be common to the Classes include:

- Whether Defendant violated Wisconsin Statute § 103.03 and Wis. Admin. Code DWD §274.03 by misclassifying Quality Assurance employees as exempt from overtime payment;

- Whether the Plaintiff and the Wisconsin Overtime Class are exempt from overtime compensation under Wisconsin law; and

- The proper measure of damages sustained by the Plaintiff and members of the putative Class.

The common questions of law and fact, as alleged in Plaintiff's First Amended Complaint, are sufficient to meet the Fed. R. Civ. P. 23(a)(2) standard as they arise from a common nucleus of operative factual allegations.

### 3. The Named Plaintiff's Claims Are Typical of the Putative Class Members.

The typicality requirement is closely related to the question of commonality. Rosario, at 1018. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. De La Fuente v. Stokley-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983). The commonality and typicality requirements serve to ensure that only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class. Mace v. Van Ru Credit Corp., 109 F. 3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. Rosario, at 1018. Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

Nordgren is a member of the Class he seeks to represent. He was a Quality Assurance employee of Defendant during the relevant statute of limitations, and

was not paid any premium for hours worked over 40 per work week. The legal theories advanced by Nordgren apply equally to him and to the members of the Class he seeks to represent. Because Plaintiff's claims involve the same legal theories and arise from the same course of conduct alleged to give rise to the claims of the proposed Class Members, the typicality element has been satisfied.

### 4. The Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

The final inquiry under Rule 23(a) consists of two parts: (1) the adequacy of the class counsel; and (2) the adequacy of representation provided in protecting the different, separate and distinct interests of the class members. Retired Chicago Police Association v. Chicago, 7 F.3d 584, 598 (7th Cir. 1993) (quoting Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)).

Hawks Quindel and Habush Habush & Rottier seek to represent the putative Classes. Hawks Quindel has served as class counsel in numerous similar wage and hour disputes in front of this Court and is experienced in handling complex wage and hour class actions. (Parsons Dec. ¶10); see Turner v. Superior Satellite Servs., 2012 U.S. Dist. LEXIS 189431 (W.D. Wis.); Freeman v. Total Sec. Mgmt., Wilcox v. Alternative Entm't, Inc., No. 09-cv-659 (W.D. Wis.). Similarly, Habush Habush & Rottier has been appointed to represent classes of plaintiffs; for example, in the State of Wisconsin's suit against tobacco manufacturers. Finally, Hawks Quindel and Habush Habush & Rottier have served as co-counsel on wage and hour cases prior to this suit. (Parsons Dec. ¶10); Fosbinder-Bittorf v. SSM

Health Care of Wis., Inc., 2013 U.S. Dist. LEXIS 152087 (W.D. Wis.); Berndt v. Cleary Bldg. Corp., 2013 U.S. Dist. LEXIS 171316 (W.D. Wis.).

Further, the Class Representative does not have any antagonistic or conflicting interests with the Class he seeks to represent. The Plaintiff has been allegedly injured by the same policies or practices as the Class and seeks compensation on his own behalf and on behalf of the Class for those injuries.

The Plaintiff has thus satisfied the requirements of Fed. R. Civ. P. 23(a).

### C. Plaintiff Has Satisfied the Fed. R. Civ. P. 23(b)(3) Standards.

In addition to meeting the Fed. R. Civ. P. 23(a) standards, the plaintiff must satisfy one of the requirements under Fed. R. Civ. P. 23(b). Where, as is the case in this matter, the plaintiff seeks monetary damages, the inquiry properly focuses on Fed. R. Civ. P. 23(b)(3). Blihovde, 219 F.R.D. at 619.

Under Fed. R. Civ. P. 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. Fed. R. Civ. P. 23(b)(3). The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003).

1. **Common Questions of Law or Fact Predominate.**

The question to be answered here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. <u>Blihovde</u>, 219 F.R.D. at 620 (citing <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997)). When challenging an alleged uniform policy, the validity of that alleged policy can predominate over individual issues such that class certification is appropriate. <u>Id</u>. (citing <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 147 n. 20 (1982)).

Through this settlement, the parties have resolved a dispute regarding what Plaintiff alleges was Defendant's misclassification of QAs as exempt from overtime compensation; Defendant maintains that its classification of these employees was correct. Because Plaintiff's claim involves the classification of a group of employees who share common job duties, training, and recruiting, and for whom the decision to classify the position as exempt was made on a class-wide basis, common issues predominate in this matter, and the Fed. R. Civ. P. 23(b)(3) standards have been met.

### 2. Class Resolution Is Superior to Other Methods of Adjudicating Claims of the Putative Class.

The final Fed. R. Civ. P. 23(b)(3) requirement, superiority, has also been met. In evaluating superiority, the Court considers (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. Fed. R. Civ. P. 23(b)(3).

Plaintiff is not aware of any other pending litigation regarding this matter. The desirability of a class in this case is readily apparent due to the size of the class represented and the nature of the alleged violations. Defendant's classification of QAs was done on a class-wide basis; therefore, adjudication of the correctness of this decision on a class-wide basis is appropriate. To attempt to determine whether each QA was misclassified individually would be not only duplicative but time-consuming, given the large size of the putative Class. To the extent that any member of the Class would prefer to litigate his or her claim separately, the class mechanism provides an opportunity for putative members to opt out of this settlement and do so. Accordingly, the Plaintiff requests that the Fed. R. Civ. P. 23 Class be certified for purposes of settlement.

### D. The Proposed Settlement Notice and Manner of Service Are Appropriate.

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. <u>Phillips v. Carlisle & Jacquelin</u>, 417 US 156, 174-5 (1985). Such a notice should define the class, describe

clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the address and telephone number of class counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312.

The Settlement Notice attached as Exhibit B to the parties' Settlement Agreement accomplishes each of the above criteria. Plaintiffs' counsel will make all efforts to contact all putative Class Members to ensure Class Members are aware of and able to participate in the settlement or to opt-out if they so choose.

## CONCLUSION

For the foregoing reasons, the parties request that the Court accept their stipulation to certify the Plaintiff's Red. R. Civ. P. 23 Class in order to effectuate settlement. Further, because the settlement represents a fair and reasonable resolution of the parties' disputes and because preliminary approval is the preferred method of administering such a settlement, the Plaintiff respectfully requests that the Court grant the parties' Joint Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted this 31st day of October, 2014.

By: */s/ David C. Zoeller*
**HAWKS QUINDEL, S.C.**
William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
Caitlin M. Madden, State Bar No. 1089238
Email: cmadden@hq-law.com
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

**HABUSH HABUSH & ROTTIER, S.C.**
Daniel A. Rottier, State Bar No. 1016998
Email: rottier@habush.com
Jason Knutson, State Bar No. 1035801
Email: jknutson@habush.com
Breanne L. Snapp, State Bar No. 1091474
Email: bsnapp@habush.com
150 East Gilman St., Suite 2000
Madison, WI 53703
Telephone: 608-255-6663
Facsimile: 608-255-0745